Monell, J. (Dissenting).
The referee put his decision upon the ground, that the credit was given to Sweetzer and not to the defendants, but I do not think the evidence sustains his conclusion.
Prior to March, 1868, Sweetzer had been publishing The Evening Mail on his own account, and had purchased the paper, upon which it was printed, of the plaintiffs. In March the defendants’ association was formed, under general incorporating laws. Sweetzer communicated the fact of such formation to the plaintiffs, and that he was secretary, treasurer and general manager of the company. He continued to purchase paper of the plaintiffs, which was delivered to the defendants, and upon which their newspaper was printed.
So far it is quite clear the defendants were liable. The purchases were made by the defendants through their agent, and they had the benefit of the purchase. But shortly after the company was formed, and while the purchase of paper was continuing to be made, in a conversation between Sweetzer and the plaintiffs, the latter inquired (with reference to changing the account on their books) if it was worth while to change the account. They said they had it on their books “ Charles H. Sweetzer, Evening Mail,” and asked him if it was necessary to make any change. He said it was not; it might just as well stand as it was; that he was the principal owner of the stock, and virtually the association, and the association him. The plaintiffs replied that if that was so, it was not worth while to scratch out and make bad-looking work on the books. Sweetzer said it made no difference.
This is all the evidence which goes to sustain the referee’s conclusion, and it falls far short, in my judgment, in showing that Sweetzer was taken as the principal debtor. It does not indicate any intention on the plaintiff’s part to give the exclusive credit to Sweetzer, or that they would look alone to him for payment. *62 The reason assigned was, a disinclination to deface their books; and they concluded not to do so, because Sweetzer told them it was not necessary, and would make no difference.
In the previous dealings between the plaintiffs and Sweetzer, the account was kept, and the goods charged, under his name, appended to which were the words,. “Evening Mail.” On the formation of the company he told them they need not change the account' (i. e., the heading), as it would make no difference. Sweetzer was the defendants’ agent, and having informed the plaintiffs of the change in the proprietorship of the paper, he did not design to become personally responsible for its debts. And when he told the plaintiffs, that the manner of keeping the account would make no difference, he merely meant that a change upon their books was not essential; and he did not mean, and the plaintiffs in acquiescing did not intend, that Sweetzer should be individually liable.
That the parties so intended is apparent from the whole course of dealing, and although some of the bills were made out in the name of Sweetzer alone, they were, doubtless, so drawn in consequence of his assurance, that there was no occasion to change the form of the account. I have not found any evidence directly tending to show that exclusive credit was given to Sweetzer. That which might be derived from the manner of keeping the accounts is stripped of its consequence by the explanations given.
The case of Meeker v. Claghorn, 44 N. Y. (5 Hand), 349, strikingly illustrates the view I have stated. The goods, in that case, were charged to Shall, who it was claimed was the defendant’s agent. The court say : “In all cases where the principals seek exemption on the ground that the credit was exclusively given to their agent, this should clearly appear, and they have the affirmative to show it, the natural presumption being, *63 in all cases, that credit is given to the principal rather' than to the agent. It is sufficient to say, that there is no conclusive evidence that the credit was given by the vendors exclusively to the agent, and that they intended to look to him solely for their pay. It is true, that upon the ledger and day-book of the vendors the articles were charged to Shall, and while this furnishes strong evidence that they were furnished upon his credit, it does not show it conclusively. The plaintiff gave some explanation tending to weaken the effect of this evidence, and its weight under all the circumstances of the case was for the referee.” And that court refused to disturb the finding.
The taking of collateral security from Sweetzer was proper, and strengthens the belief, that the plaintiffs did not look upon Mm as their original debtor. The proof also is clear that the notes and mortgage were mere collaterals and not payments.
It is not disputed, that the defendants received and used the paper purchased for them by Sweetzer; and I should require strong proof of an intent on the part of the plaintiffs, to wholly ignore the defendants, and to only know Sweetzer in the transaction, before allowing the defendants to reap the fruits of their agent’s dealings, and then escape payment on the plea that the credit was given to their agent and not to themselves.
Removing from the case, therefore, all mere technicalities and rigorous rules of law, the simple question to be answered is, shall the defendants, who have received and used for their own emolument the plaintiffs’ property, not pay for it?
I am in favor of reversing the judgment.